ready for 22-1130 Anderson v. DelCore. Mr. Vaughn? Yes, Your Honor. May it please the court. This case involves an appeal of summary judgment denial of qualified immunity to Colorado Springs Police Officer Vito DelCore. Officer DelCore had become involved in circumstances in which he ended up using force along with two other Colorado Springs police officers and a detective from Teller County Sheriff's Office related to an incident of suspected child abuse. That incident found its way to Memorial Hospital in Colorado Springs where the family refused to allow forensic nurses to photograph the child to otherwise to say what had happened. When it was determined that the incident had occurred within the jurisdiction of Teller County, that's when the Colorado Springs police officers called in Teller County and they dispatched the detective Matarazzo. Matarazzo went, he attempted to, before Matarazzo arrived, he obtained information from the Sheriff's Office that Ms. Haichu, who was the mother of the injured child, had been texting on her phone what had occurred with regard to the child abuse. And so when he got there, he asked if she had been communicating regarding what occurred or, and specifically, whether or not there had been texts. And she denied that that had happened, knowing that he had had information that there were. He asked to get her cell phone. The cell phone was close by, but her fiance, the plaintiff in this case, Mr. Anderson, he reached for the wife, for his fiance's cell phone and took it and refused to give it to the detective. Although the detective attempted to persuade them to give the phone to him, that he thought it was evidence in the Colorado Springs police officers, including my client DelCorp, were located and asked them to assist to get the cell phone because he was afraid that the information on the cell phone was subject to erasure and that it was an exigent circumstance to be able to take possession of the cell phone. The officers, including my client DelCorp, went in. Initially, DelCorp reached for the phone that he saw in the back of Mr. Anderson's pants. Mr. Anderson backed away and said, no, you don't reach for anything. There was attempts to persuade him to provide the cell phone. There were attempts to persuade him to go out into the hallway and cooperate with police officers, but he refused to do so. He was told that he would be arrested for obstruction. And he said, you're not going to arrest me for anything. You don't get this phone. When my client DelCorp went around to the back side, he had by that time pulled a taser, and as a show of force with regard to the taser, and that didn't persuade Mr. Anderson. He went around to the back side of him. He reached for his right arm, pulled it behind him to take him into custody and escort him to the hallway for the obstruction charge. And he began resisting. And as the court Judge Jackson says in his order, that once he started resisting, he in fact was getting the better of the fight. Mr. Anderson was getting the better of the fight and was overcoming the officer's attempts to be able to get him under control. Once that happened, DelCorp attempted to tase the plaintiff. Once that was ineffective, he went to the ground with all of the officers. He continued to struggle. He was tased again. He did tase him, didn't he? I'm sorry. He said attempted to tase him. He did tase him. It was two tasings. The first one was a tase. The first was a tase. It did not make the two connections, though that's not part of the drug court's- Let me just ask on your factual recitation, what do we do with the district court's order denying qualified immunity? It said the plaintiff did not, and I'm quoting, pose an immediate threat to the officers or anyone else. And quote, he was not resisting or fleeing arrest. That's at page 12 of the order. Don't our cases require us to accept those facts on interlocutory appeal? Yes, Your Honor, they do. I mean, you could look to the video, which is part of the record. I'm not asking the court to make a determination that the video- Well, you said he was resisting and the court said he wasn't resisting. But if you read further in the order, the court does, in fact, say that he was resisting. I think that- I'm not sure I can direct you to the exact page number, but it's in the second appendix. And the court goes on to say that he starts resisting once his arm is pulled behind his back. Well, what are we supposed to do with the court saying on one page that he's not resisting and on another we have something else? They're not inconsistent. They're temporarily different. He was not attempting to resist at the time that they're having the conversations. But it's very clear that the trial court makes the determination that he is attempting to resist when he pulls that arm back behind his back. And if the court looks to that court order, it'll see that the court specifically says that he's- And in fact, if you look at the complete content of the order, Judge Matheson, you'll see that the court dismissed all of the claims against the other officers who were also involved in the use of force. And so this takes me back to the tasing question. Yes, there was a tase, though it was ineffective, the first tase. And he was tased again while he was still on the ground, still in resistance. And that was the facts of the case. How do we know he was resisting on the second tase? You can look at- Well, the court, because the court exonerates all- He finds qualified immunity in all the other officers who were on him at the same time. I'm not asking about the other officers. Was he resisting when Officer Delcourt tased him the second time? Your Honor, I believe that- I mean, there were four officers and he's on the ground. Is he really resisting at that point? He is. And the court can look to the video for that. I have looked at the video. I'm asking you. Is it your position that he was resisting? Absolutely. That's absolutely my position, Judge. He was not only resisting, he was resisting at a great extent. He was not just laying there and then he got tased for no reason. And the district court did not make that finding. The court made the finding based instead on the pre-seizure conduct of Officer Delcourt. And that's what takes me- That'll segue me into these issues. And I know, Your Honor, that the three- All three of the judges in this case have been involved in a number of the cases involving qualified immunity. Sevier v. City of Lawrence and Bond v. City of Tahlequah. Even White v. Pauley, Cox v. Wilson and Arnold v. City of Olathe. One or more of you have all rendered opinions in those cases. I'll try not to go into some of the more well-worn statements as it relates to qualified immunity. I may not be the only qualified immunity case you hear today. And so, but I do want to jump into what I think is an important issue. One of the reasons that I request a oral argument in this case. Well, there's two primary reasons. One is this pre-seizure conduct. I refer to the pre-seizure conduct, if the court will, as to the danger creation theory. We can relate it to whatever title we want to give it. But it really goes to the question of, is there a continued viability of this Sevier notion? The Sevier notion that says that you can look to pre-seizure conduct. And it's our position that the Bond v. City of Tahlequah case has called into question Sevier's reliance on that in the Supreme Court's position. And it says Sevier was dicta. And in true, it was only dicta. It referred to Bella. But the Bella. Bond was a pronged to qualified immunity case. Absolutely. And your argument goes to prong one. Yes, but in deciding prong two. We have 10th Circuit authority saying that the officer's conduct is not irrelevant. Is it now irrelevant? Is that what you're saying? I'm saying, yes, Your Honor. I'm saying that pre-seizure conduct is not relevant to a constitutional violation. Yes, I'm saying. And where do you get any authority for that? Because the Supreme Court wasn't addressing prong one. And it mentions dicta. Where does it say that it's irrelevant? Well, it says that it's dicta. That doesn't mean irrelevant under our case law. Well, Your Honor, there's a number of cases that state that you look at the circumstances that existed at the time of the use of force. And the danger creation theory is inconsistent with that. There's a split in the circuits with regard to that danger creation theory. And although Bond was deciding. Well, counsel, do you have a 10th Circuit case that says that that evidence is irrelevant? Do you have a single 10th Circuit case that says that? No, Your Honor. And I say in my brief that I think that Bond. Isn't Fourth Amendment excessive force dependent on the totality of the circumstances? Graham sets forth three non-exclusive factors. We're not going to let district judges even consider that evidence. Your Honor, the evidence of pre-seizure conduct, if it occurs that it's not directly linked to the actual time of the use of force, is inappropriate for looking at it. Now you're adding to your rule. I mean, it started out as none of this is relevant. Now it has to be directly in time and circumstance. What rule are you asking us to adopt? I'm asking you to adopt the rule of the several circuits that say that you do not look at the pre-seizure conduct, that you look to what is occurring at the time of the incident. Now, fair enough. What's your best out-of-circuit case so we can look at that? I cite several cases. The City of Olath case provides, I believe it's the Second Fourth Circuit cases. And City of Olath, it cites those that discuss the fact that you don't use the pre-seizure conduct. And I don't have those in front of me, Judge. I apologize. What about conduct that was during the confrontation, not setting it up before, but during confrontation, but preceding the actual use of force that constituted seizure? Would you say that would or wouldn't be considered? I mean, Cervier clearly says it would be considered if it's right there on site, on scene, and part of the transaction that led to the seizure. Are you saying that it is? I mean, that seems to me it still is 10th Circuit law. Your Honor, I agree that it is still 10th Circuit law. But I do think that Bond, although it doesn't write the obituary for Cervier, it does deal it a severe blow in saying that it's merely gift of that statement. And if you go back and you look at the Bella case on which that was based, I understand you wrote Cervier, Judge, and I don't want to tell you what the case says. No, no. We understand our role in this. We're not final. And we accept that. We've all accepted that. I have no problems with that. Your Honor, I'm running low on time. And I want to say some rebuttals. I want to move to the second point. I think this whole issue, I want the court to address this. I'd love to see on the first prong of the court to say whether or not the Cervier rationale still exists. It's our argument that it doesn't. We'll move to the other point. But the other point is you can avoid this, much as the court did in Bond. And you can go, as Judge Metz has said, directly to the second prong. And that is, in this case, the trial court specifically said, there is not a case with factual symmetry. There isn't one. I don't cite one. The plaintiffs don't cite one. The plaintiffs don't cite any case with factual symmetry. And if you don't have factual symmetry of a case, and in Bond, the court says, you have to have that factual symmetry. That's why Bond was reversed, is because in that case, the panel determined that you would use this pre-seizure conduct. And the court says, you've got to have a case with factual symmetry. And there wasn't one cited. They do cite Casey, don't they? They cite Casey. Who? The appellees. No, the only case that the appellees, and we address this in the brief, the only case that's not an unpublished opinion that they cite, Your Honor, is, I believe, the Morris, I think it's the Morris versus no case. But that's in the context of a domestic disturbance that is absolutely and consistently dissimilar. I'm looking at cites to Casey in their brief, but Your Honor, but if you look at my brief, you'll see 13, 14, and 22. None of those cases have factual symmetry. Do you know the Casey case? Can you distinguish the Casey case? I don't know the Casey case. I apologize. Not off the top of my head. But I do know in my reply brief, I address each of their cases, and they're all unpublished, except for the one case, and that has no factual symmetry. And in the district court opinion, the court states that they didn't cite any, and the court cites none with factual symmetry. And I don't believe there is a case with factual symmetry. And you can decide it on that issue alone, because these kind of cases absolutely require for notice to the police officers to know what they're doing is unconstitutional, that they have notice ahead of time as to the unconstitutionality of their acts. I'll reserve the few seconds I have for rebuttal. Mr. Ellis. May it please the court. I represent the plaintiff, Apelli C.J. Anderson. To get to your question immediately, Judge Matheson, we did cite the Casey case, and it is similar to this. Defense counsel have an issue with factual symmetry. The cases certainly require that. The most important facts that you need to look at, though, are the ones that Graham versus Conner says are important, right? So you look at what the crime is suspected. You look at whether the person is a threat at all, and you look at whether they are trying to resist or flee. You'll have factual differences between excessive force cases. One of them will happen in a hospital, as it did here. One of them will be in a parking lot of a courthouse, as Casey was. One thing that's missing from the Graham factors, and I mention this because we've had several cases in the last few months involving this other situation, which Graham doesn't specifically address, and that is when an officer requests or demands a citizen to do something, and the citizen refuses to honor that lawful request. Officers don't just have to say, okay, too bad, you won't do it, so we can't use force to make you do it. I think that's not the law, but it doesn't fit the Graham factors, which the court said in Graham are not exclusive. And it seems to me that you're right. The way they express the three Graham factors doesn't fit here, but what we do have is this other situation that seems to be cropping up more often, where there's a lawful request to get the cell phone, and you haven't challenged that aspect of the case. The person doesn't turn it over, and the officers have to use force to get the cell phone. So doesn't that take care of the problem with Graham, or is this situation where someone refuses to obey a lawful police order, is that simply one where officers can't use force? No, I don't know that it's one where officers can't use force, but it is within the Graham factors. It's the first factor. It's what's the crime they're suspected of.  He refuses to turn over the phone. At that point, you can say, put your hands behind your back. You're under arrest for obstruction. I think that's perfectly allowed. You can't sneak up behind someone, grab them, and then immediately tase them, as Judge Jackson decided or found based on the video. And why do you say you can't do that? Because of cases like Casey, because a case decided five or six months ago. Casey gives you the authority you need to describe the situation in Casey and why it fits that situation. So Casey was similar in the sense that the suspect had removed a file from a courthouse and had gone out of the parking lot. The law enforcement officer arrived and said, hey, you're not allowed to take that out of there. I believe the suspect gestured as though he was going to give the file to the officer, but then started walking away. And then the officer grabbed and tackled eventually, and then with other officers, tased him. That, to me, sounds a lot like what happened in this case. Again, it's in a hospital room versus a parking lot of a courthouse. But for grand purposes, I don't think that matters. Factual differences aren't the issue.  But the underlying offense they're looking at is child abuse. Does that make a difference? That is not what Judge Jackson found. That's also not what, I mean, the body cam just before Delcor grabs my client and then immediately thereafter tases him for the first time and then seconds later tases him the second time. He says, you're going to be under arrest for any question. Yeah, but was there, well, no, there weren't. But the evidence is important for what could be a very serious crime. Yes, I agree. They're looking for, they want to get evidence that could be destroyed quickly so they don't have time to go get a search warrant and get it. And that's what they're, that was what they were investigating to start with. Does that make a difference? Uh, I believe it made a difference to our unlawful search claim. And the exigent circumstances that you're describing there allowed them to, without a warrant, seize that property. I don't, does that make it more important to get the phone right away as opposed to the records in Casey, which, as I recall, they were taking from the court clerk or something like that. I can't remember if it was the court clerk or the city clerk. And they're not worried about those documents being destroyed by Mr. Casey. And here they're concerned about these people who have not cooperated in saying what happened, destroying evidence that might be probative regarding what happened. Is that? Yes, Your Honor, I believe that's why exigent circumstances apply to seize the phone. But I don't know of case law that says if you really want evidence, you can use more force than you otherwise would be able to. Well, except that exigent circumstances is a separate justification for even entering a house. And so it recognizes it is a very legitimate factor. And it seems to me that it's not a very big step to say if exigent circumstances can be justified, it ought to qualify as some exigent circumstance justifying more force during an arrest. I mean, it seems to me that the latter is probably a lesser invasion in some ways than actually going into a person's house. I would argue that being tased in a hospital room in front of your family and your 19-year-old 19-year-old daughter. Tase, the one that was effective, you have an additional justification for tase, which is that you actually had force ongoing at that point and force that potentially could have jeopardized an officer. So I think that the effective tase is justifiable in a different reason. Your Honor, in response to that, there was a case decided five or six months ago now. I believe both you and Judge Matheson were on, called McWilliams v. DiNapoli. And that one, to me, looks very similar. It did involve a tasing, but it's a suspect of a minor crime. Here we have obstruction there. It was trespassing in a marina. And the suspect, and this is important, it's at the time that the force was decided to be used. So Mr. Vaughn wants to hold against my client what he did after he was grabbed and had been repeatedly threatened by Officer Delcourt. He doesn't want us to look at what the officer did before he grabbed and then basically immediately tased him. And he only wants to look at what Mr. Anderson did after that. But I don't believe that's how that works. Well, let me ask you, in terms of what happened before the defendant reached around to grab the phone, how much had, what had the officers done up to that point to make it known to your client that they demanded the phone? And compare that to the situation in Casey. At some point, if you keep demanding and the person doesn't give it to you, you would agree at that point you can use force? Or do you just have to wait and try to persuade for as long as it takes? No, I would agree you can use force, Your Honor. But this is quintessentially the type of case that, since Graham has said, justifies the least amount of force. It's a nonviolent misdemeanor. That's why the situation is so important. It's where you're entitled to something as an officer and the person won't do that. The person won't leave the car. The person won't give you something. And at some point, officers have the right to use force to make the person do that, even if it's a traffic offense and they need the person to leave the car. That's what Graham doesn't really, in its terms, it doesn't really deal with that situation. And that's what we've been getting some of recently. And that's why I asked about that. So had they not repeatedly asked for the phone and said, you have to give it to us before the officer tried to sneak up and grab it? They had for one year, Your Honor. And the sneak up and grab is actually two different parts. The sneak up and grab is what the officer Delcourt did immediately upon entering the hospital room before these officers had said, hey, give us the phone. He had just tried to steal it from Mr. Anderson with his hands. At the time of the use of force, he grabbed Mr. Anderson. He wasn't reaching for the phone. He was grabbing Mr. Anderson. Mr. Anderson pulls away, ends up on the ground getting tased. So he came in the room, tried to grab the phone, didn't succeed. Is that when he tackled him? Was there some interval when the officers were saying, give us the phone, give us the phone? Yes, there was. It was the other officers all the while. Officer Delcourt repeatedly threatened my client, pulled out a taser within 15 seconds, to which Mr. Anderson said, you're going to tase me for not. He was incredulous about it. He wasn't, he didn't threaten the officer back. No, but he wasn't responding to a lawful order. At which point, Your Honor, what I would say is the proper course of action is to say, you know what, put your hand behind your back. You're under arrest. The proper course of action is not to sneak around someone and grab them. I totally agree that it'd be better police practice, but that's not what we're to decide here. It's what's constitutionally permitted. And once someone refuses to turn over something that they're ordered to turn over, is it unconstitutional to use force as opposed to a more civilized way of dealing with it? Yes, Your Honor. This force? Yes. Really? It is. And you have a case like that? Casey, I think, is the nearest. This McWilliams case. How many times was Casey, did he demand the documents from Casey? That I don't know for sure, and I'm not sure that it was, I don't believe that case was on video, so it's, some people testifying to this and some people testifying to that, so I don't know. Could I just ask you about the resistance issue? I asked Mr. Vaughn about a portion of the district court's order. I'd like to ask you about another portion, which I think he alluded to. And there, the court said that your client was physically struggling, I'm quoting, physically struggling against Officer Delcourt, and appeared to be overpowering the officer, and that he was actively resisting Officer Delcourt's attempts to control him. Now, isn't that relevant in the Graham Factor analysis? And do we have to accept those statements from the district court order on interlocutory appeal in deciding this question? As to the last question, because there's a video, I don't believe that you do have to accept that loss. Well, doesn't the video have to be in blatant contradiction of a district court finding for us to rely on the video? Maybe that's what you're suggesting. That is the standard, Your Honor. And I would also say that there's the extra layer of blatant contradiction of essentially failing to view the video in the light most favorable to the non-moving, to Mr. Anderson. So there's an extra layer there. Are you saying, then, is it your position that we are bound on interlocutory review to conclude that he wasn't resisting? No, I'm not saying that. So he was resisting? He pulled away and then went to the ground. And as Mr. Vaughn said, he was not still on the ground. He was moving around. All right. But under those circumstances, I take it it's still your position that the second case was unreasonable? Yes, Your Honor. And also, again, given the fact that Officer Delcourt created the situation entirely, I would send you again to McWilliams v. G. Napoli, which is 40 F. 4th 1118. And that is another case where an officer essentially antagonized a person and then got into a struggle with them. And the court said, a reasonable fact finder could determine that Mr. DiNapoli had deliberately or recklessly incited Mr. McWilliams. It explains how that happened. Based on these actions, the district court concluded that a reasonable fact finder could determine that Mr. DiNapoli had tried to incite Mr. McWilliams. So Mr. DiNapoli couldn't use Mr. McWilliams' reaction to justify the use of force. And that's essentially what we have here. I mean, the relevant part of the video is a minute and a half. And Officer Delcourt has threatened my client repeatedly and then grabs him and then tases him. As Judge Jackson found based on the video, he tases him quicker than my client really could have understood and responded to. He threatened to do something to him because he was violating the order. The threat would disappear immediately if your client turned over the phone. Isn't that consistent? Isn't that the only way to look at that? Does that make the threat wrong to say, I'm going to do this if you don't do what you're required to do? Well, he threatens that my client's going to hit the ground really hard.  I would say yes, Your Honor. And how did that encourage him to resist? I would think it would do the opposite. If you're saying that the officer incited action, which then the officer uses to justify a response to that reaction. But here, the officer's action induces your client to do what? To resist more? No, I believe my client resisted when he was grabbed, surprisingly. And on very short notice while he's carrying out a conversation still with the other officers about that meeting on the phone. I see my time is up. Thank you. Is there no further questions? You have a few seconds left, I think. Your Honor, if I were to ask the court to review them in one case, which of course it won't. But if I were to be asked to do that, it would be the Supreme Court's. We won't just review one case. I understand. If there was just one. If you ask us to review one, we will review that one for sure. And I'm sure you've already read it. But it's the city of Tahlequah, Oklahoma versus Vaughan Supreme Court. Decision in which it did the per curiam reversal of the Tenth Circuit decision. And in that particular opinion, I think you could just take the facts of this case for the second prong. Because I agree with Judge Matheson that it was a second prong case. But for applying the second prong, you could take the facts of this case and plug them into the decision in that per curiam opinion. And it would read, I believe, very similarly to the rationale for this court granting qualified immunity under the second prong to Officer Delcourt. And it looks like I have a few extra seconds. Oh, I'm the over, right? Thank you. I've been. My colleague has pointed out that I'm actually over. But you didn't get to start until your time was up, actually. All right. Very good. Well, that's all I have. Thank you, Your Honors. Thank you both for your presentations. Cases submitted. Counselor excused.